David W. STEEDLE, M.D.; Neil Wald-
man, M.D.; City and County of Denver;
and Denver General Hospital, n/k/a Den-
ver Health Medical Center, Petitioners

v.

Bradley Scott SEREFF, individually and
as personal representative of the Estate
of Jennifer Sereff; Elliott Sereff,
through his guardian, father, and next
friend, Bradley Scott Sereff; and Skylar
Sereff, through her guardian, father,
and next friend, Bradley Scott Sereff,
Respondents.

No. 05SC811.

Supreme Court of Colorado,
En Banc.

Sept. 10, 2007.

Johnson, McConaty & Sargent, P.C., Craig A. Sargent, Glendale, Colorado, Attorneys for Petitioner David W. Steedle, M.D.

Arlene V. Dykstra, Acting Denver City Attorney, John Eckhardt, Assistant City Attorney, Denver, Colorado, Attorneys for Petitioner Neil Waldman, M.D.

Jaudon & Avery, LLP, Joseph C. Jaudon, David H. Yun, Denver, Colorado, Attorneys for Petitioners City and County of Denver and Denver General Hospital, n/k/a Denver Health Medical Center.

Leventhal, Brown & Puga, P.C., Jim Leventhal, Benjamin Sachs, Denver, Colorado, Attorneys for Respondents.

University of Colorado, Office of University Counsel Patrick T. O'Rourke, Managing Associate University Counsel Denver, Colorado, Attorneys for Amicus Curiae University of Colorado.

Senter Goldfarb & Rice, L.L.C. Thomas S. Rice, Elliot J. Scott, Denver, Colorado, Attorneys for Amici Curiae Colorado Intergovernmental Risk Sharing Agency, Colorado School Districts Self Insurance Pool, Colorado Counties Casualty and Property Pool, and the Colorado Municipal League.

John W. Suthers, Attorney General, Friedrick C. Haines, First Assistant Attorney General, Kathleen Spalding, Assistant Attorney General, Civil Litigation and Employment Section, Attorneys for Amicus Curiae State of Colorado.

Pryor Johnson Carney Karr Nixon, P.C. Elizabeth C. Moran, Greenwood Village, Colorado, Attorneys for Amicus Curiae COPIC Insurance Company.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review the court of appeals' opinion in *Sereff v. Steedle,* 148 P.3d 192 (Colo.App.2005). The court of appeals below reversed the trial court's order granting summary judgment for the defendant hospital and doctors in this wrongful death case. *Id.* at 198. The court of appeals held that the deceased patient's husband and two children suffered separate injuries for the purposes of the Colorado Governmental Immunity Act ("CGIA"), and thus the $150,000 statutory damages cap applies separately to each family member. *Id.* At issue are the damages recoverable where multiple parties bring a suit for the wrongful death of a family member against a governmental entity or employee. This case involves the intersection of the Wrongful Death Act, §§ 13–21–201 to –204, C.R.S. (2006), and the Colorado Governmental Immunity Act, §§ 24–10–101 to–120, C.R.S. (2006).

The Wrongful Death Act allows a person's heirs to recover damages for the wrongful death of that person, § 13–21–202, but limits damages by requiring that all claims pursuant to the death of one person be combined into one civil action, § 13–21–203, C.R.S. (2006); *Hernandez v. Downing,* 154 P.3d 1068, 1070 (Colo.2007). Any damages from this combined civil action are then

distributed to the decedent's heirs through the statutes of descent and distribution. §§ 13–21–201(2), –203(1)(a).

The CGIA further limits recovery where a party brings a wrongful death action against a governmental entity or employee. § 24–10–114. The CGIA limits judgments to $150,000 per "injury." § 24–10–114(1)(a) to (b). Thus, the crux of this case is the definition of "injury."[1] The court of appeals held that each family member suffers a separate injury under the Wrongful Death Act, and thus, that each family member may recover up to $150,000 under the CGIA. The Sereffs assert that the court of appeals is correct, citing section 24–10–114(1)(b), which allows recovery of $150,000 per person where more than one person is injured in the same occurrence. The petitioner-defendants argue that for the purposes of a wrongful death action, "injury" means death, such that the Sereffs are limited to a total of $150,000 in damages for the death of Jennifer Sereff.

Based on the plain language of the CGIA, we agree with the defendants that the court of appeals erred in interpreting the CGIA. By its own statutory definition, section 24–10–103(2) of the CGIA defines an "injury" as including "death." In addition, we note that if death were not the operative injury for actions brought under the Wrongful Death Act, then the word "death" in the CGIA statutory definition of "injury" would be rendered meaningless. Further, the Sereffs' interpretation is inconsistent with the method of distributing damages for a wrongful death action to heirs through the statutes of descent and distribution. Hence, we hold that the operative injury for the purposes of a wrongful death action is the wrongful death itself, i.e., the death of Jennifer Sereff, and section 24–10–114(1)(a) of the CGIA limits damages to $150,000 in this wrongful death case. We thus reverse the court of appeals' decision and remand this case to be returned to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

Jennifer Sereff checked into the emergency department at Swedish Medical Center complaining of severe migraine headaches on December 26, 1994. Dr. Neil Waldman, a resident in emergency medicine, administered a drug to alleviate her symptoms. Within a few minutes, she began suffering seizures and became unresponsive, at which time she was transferred to the Intensive Care Unit. Jennifer Sereff died three days later without regaining consciousness.

Dr. Waldman was a resident with Denver Affiliated Residency in Emergency Medicine, a program sponsored by Denver General Hospital and the City and County of Denver. Residents in this program circulate through the emergency rooms of several ·hospitals, including Swedish Medical Center. Dr. Waldman's supervisor during this time was Dr. David Steedle, who was employed by the same residency program.

Jennifer Sereff's immediate family, including her husband Bradley and her two children, sued Dr. Steedle, Dr. Waldman, the City and County of Denver, and Denver General Hospital under the Wrongful Death Act, asserting that the negligent administration of medication caused Jennifer Sereff's death. Because all of the defendants are public entities or public employees, the Colorado Governmental Immunity Act applies to the Sereffs' lawsuit.

The defendants moved for summary judgment and for leave from the trial court to deposit $150,000 into the court registry on the grounds that this was the maximum amount the Sereffs could recover. The defendants noted that the CGIA limits damages to $150,000 per "injury" and asserted that the operative injury in this case was the death of Jennifer Sereff. The trial court granted the defendants' motion for summary judgment and ruled that the plaintiffs' claims are subject to a collective $150,000 damages

1. This Court granted certiorari on the following issue:

> Whether the court of appeals erred in concluding that each wrongful death claimant "suffered a separate injury under the Wrongful Death Act" and that the $150,000 damages cap under the Colorado Governmental Immunity Act "should apply to each separate injury in a wrongful death action."

limit under section 24–10–109(1)(a), C.R.S. (2003).[2]

The Sereffs appealed this decision, arguing that the $150,000 damages cap applies to each individual claimant because each family member suffers a separate injury from a wrongful death for the purposes of the CGIA. The court of appeals agreed and reversed the trial court's decision, holding that the Sereffs could recover up to $150,000 each for a total of $450,000 in damages under the CGIA. The court of appeals noted that this amount is subject to any other statutory limitations imposed on recovery, such as the cap on noneconomic damages in the Wrongful Death Act.

The defendants petitioned this Court for certiorari review and argue that the court of appeals' interpretation of the CGIA damages cap is contrary to the plain language of the CGIA. We agree. We reverse the court of appeals' decision and remand this case to the court of appeals to be returned to the trial court for proceedings consistent with this opinion.

## III. Analysis

This case requires a determination of the damages recoverable where multiple parties bring a wrongful death suit against a governmental entity or employee. Thus, we consider how the Wrongful Death Act and the Colorado Governmental Immunity Act operate together to define damage caps in such a case.

The Wrongful Death Act allows a person's heirs to recover damages for the wrongful death of that person. § 13–21–202.[3] The Wrongful Death Act, however, limits damages in several ways. First, the Wrongful Death Act requires all claims pursuant to the death of one person to be combined into one civil action. § 13–21–203(1)(a);[4] *Hernandez,* 154 P.3d at 1070. Any damages from this combined civil action are then distributed to the decedent's heirs through the statutes of descent and distribution. § 13–21–201(2);[5] *see also* § 13–21–203(1)(a) (stating that damages accruing under section 13–21–202 "shall be sued for and recovered by the same parties and in the same manner as provided in section 13–21–201"). Second, the Wrongful Death Act caps noneconomic damages for medical malpractice actions accruing before July 1, 2003, at $250,000. *See* § 13–21–203(1)(b); *Colo. Permanente Med. Group v. Evans,* 926 P.2d 1218, 1229–30 (Colo.1996). Section 13–21–203(1)(b) references the limitations for noneconomic damages in the Health Care Availability Act, sections 13–64–101 to –503, C.R.S. (2006).[6]

When the CGIA is overlaid onto the Wrongful Death Act, recovery is further limited when a party brings a wrongful death action against a governmental entity or employee. The CGIA limits judgments to

---

**2.** The trial court granted the defendants' motion for summary judgment on reconsideration. In an initial order, the trial court denied the defendants' motion.

**3.** Section 13–21–202 provides:
Action notwithstanding death. When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

**4.** Section 13–21–203(1)(a) provides, in relevant part: "There shall be only one civil action under this part 2 for recovery of damages for the wrongful death of any one decedent."

**5.** Section 13–21–201(2) provides, in relevant part:

The judgment obtained in an action under this section shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution and shall be divided among such heirs at law in the same manner as real estate is divided according to said statute of descent and distribution.

**6.** Section 13–64–302(1)(b) of the Health Care Availability Act applies to the facts of this case because the acts or omissions forming the basis of this lawsuit occurred in 1994. This provision states that the $250,000 cap is adjusted for inflation. § 13–64–302(1)(b) (capping damages for noneconomic loss at "two hundred fifty thousand dollars, present value per patient"). The Sereffs assert in their briefing that the adjusted cap for noneconomic damages in this case is $341,250. As of July 1, 2003, the damages cap for medical malpractice actions was raised to $300,000 and is not adjusted for inflation. § 13–64–302(1)(c).

$150,000 "for any *injury* to one person in any single occurrence." § 24–10–114(1)(a) (emphasis added). Further, the CGIA limits judgments to $600,000 "for an *injury* to two or more persons in any single occurrence . . . except that, in such instance, no person may recover in excess of $150,000." § 24–10–114(1)(b) (emphasis added).

█ Hence, the operative question in this case is the definition of "injury" for the purposes of the CGIA's damages caps. Section 24–10–103(2) of the CGIA defines "injury" as including "death":

"Injury" means *death,* injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

(Emphasis added).

█ The Sereffs present two main arguments in support of their position that each family member is injured by a wrongful death, such that the $150,000 damages cap in the CGIA applies separately to each family member. First, the Sereffs assert that section 24–10–114(1)(b) of the CGIA, which establishes a $600,000 damages cap where multiple parties are injured in the same occurrence, allows each family member in a wrongful death case to recover up to $150,000 by its plain language. The Sereffs assert that two cases decided by this Court support their statutory interpretation of section 24–10–114(1)(b) of the CGIA: *Lee v. Colo. Dep't of Health,* 718 P.2d 221 (Colo. 1986), and *City of Colorado Springs v. Gladin,* 198 Colo. 333, 599 P.2d 907 (1979). Second, the Sereffs assert that they brought not only a wrongful death action, but also a survival action as a separate and indepen-

dent claim, and that the survival action in the name of the estate of Jennifer Sereff is entitled to a separate $150,000 damages cap.[7]

As to their statutory argument, the Sereffs assert, as the court of appeals held, that each family member suffers a separate injury for the purpose of the CGIA and that each injured party is permitted to recover up to $150,000 under section 24–10–114(1)(b). This provision allows for multiple parties to recover up to $150,000 each where each suffers an "injury":

The maximum amount that may be recovered . . . shall be . . . [f]or an injury to two or more persons in any single occurrence, the sum of six hundred thousand dollars; except that, in such instance, no person may recover in excess of one hundred fifty thousand dollars.

§ 24–10–114(1)(b). The Sereffs claim that this provision anticipates their situation, and that where multiple family members join a wrongful death action, each family member may collect up to $150,000 in damages because each family member suffers a separate "injury" from the wrongful death. As support for this argument, the Sereffs point to two of our cases upon which the court of appeals relied: *Lee,* 718 P.2d 221, and *Gladin,* 198 Colo. 333, 599 P.2d 907. *Sereff,* 148 P.3d at 198. Neither case, however, applies here.

In *Gladin,* this Court held that subsidence damage to a single tract of land caused a separate injury in each joint property owner, such that the damages cap in the CGIA applied separately to each owner. 198 Colo. at 336, 599 P.2d at 908. This holding does not control the outcome of this case because there is no analogous statutory provision re-

---

7. The Sereffs asserted at oral argument that in addition to and separate from their wrongful death claim, they brought a survival action in the name of Jennifer Sereff's estate for personal injuries that she suffered before her death under section 13–20–101. Under the reasoning of *Lee,* the Sereffs argue, this is a separate tort and merits a separate $150,000 damages cap under the CGIA. This question was not addressed by the trial court or the court of appeals below, and it is beyond the scope of the issue on which this Court granted certiorari (which involves wrong-

ful death claims and not survival actions) because it was raised for the first time in the Sereffs' answer brief to this Court. We decline to address this issue because it was raised for the first time on appeal. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). In any case, we note that neither the Sereffs' complaint nor their amended complaint alleged a survival action.

quiring claims of joint property owners to be collective—such as section 13–21–203(1)(a) of the Wrongful Death Act—and the *Gladin* plaintiffs therefore established that they each had suffered separate and independent economic damages from the subsidence warranting separate damages caps. *See id.*

*Lee* involved multiple loss of consortium claims appurtenant to a personal injury action, and thus the facts of *Lee* are closer to those in the current case because both cases involve the application of damages caps to derivative claims. 718 P.2d 221. In *Lee*, this Court held that each plaintiff bringing a loss of consortium claim is subject to a separate $150,000 damages cap under section 24–10–114(1) of the CGIA because a loss of consortium claim is a tort separate from the underlying negligence action. *Id.* at 230.

■ However, *Lee* is distinguishable from this case because the right of the heirs to collect damages in a wrongful death case does not arise from a separate tort, but instead is wholly derivative of the injury to the decedent. *Pizza Hut of America, Inc. v. Keefe,* 900 P.2d 97, 102 (Colo.1995) (holding that "[t]he cause of action created by [the Wrongful Death Act] arises out of tortious acts which injured the decedent and resulted in the decedent's death; the survivors' right of action is derivative of and dependent upon the right of action which the decedent would have had, had she survived the injuries"); *Crownover v. Gleichman,* 38 Colo.App. 96, 554 P.2d 313, 316 (1976). Whether an individual heir suffers actual damages is irrelevant; unlike a loss of consortium claim that requires proof of personal damages, a wrongful death action involves a shared injury among survivors such that there is no individualized recovery of damages. *Aiken v. Peters,* 899 P.2d 382, 384 (Colo.App.1995). A wrongful death action "is one that is possessed, collectively, by the heirs at law of the decedent." *Id.*

Not only is the wrongful death action possessed collectively by the decedent's heirs at law, but damages are distributed to those heirs through the statutes of descent and

distribution. §§ 13–21–201(2), –203(1)(a). This system of distribution of damages undermines the Sereffs' argument that each family member suffers a discrete injury under the Wrongful Death Act. Jennifer Sereff's children would not actually recover anything based on the facts of this case because her husband, as the surviving spouse and father of all of Jennifer Sereff's surviving descendents, would recover 100 percent of the damages under the statutes of descent and distribution-up to $450,000 on the facts of this case. § 15–11–102(1)(b), C.R.S. (2006).[8] Such an interpretation would contradict the plain language of the CGIA, which states that "no person may recover in excess" of $150,000. § 24–10–114(1)(b).

■ The Sereffs' argument misses the mark because it fails to address the critical question which we must determine: what constitutes an "injury" under section 24–10–103(2) of the CGIA. When interpreting the meaning of a term within a statute, our goal is to effectuate the intent of the General Assembly. *People v. Rockwell,* 125 P.3d 410, 417 (Colo.2005). In so doing, the first step is to look to the plain language of the statute. *Id.* If the statutory language is clear and unambiguous, we need look no further. *State v. Nieto,* 993 P.2d 493, 499 (Colo.2000).

■ Where possible, courts must give effect to every word in a statute. *Charlton v. Kimata,* 815 P.2d 946, 949 (Colo.1991) (*citing Johnston v. City Council of Greenwood Vill.,* 177 Colo. 223, 228, 493 P.2d 651, 654 (1972)). Section 24–10–103(2) of the CGIA defines "injury" as including death:

> "Injury" means *death,* injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

■ (Emphasis added). By the statutory definition in the CGIA, "death" is one type of "injury." Under Colorado law, there exists no other cause of action for the death of

---

**8.** Section 15–11–102(1)(b) provides: "If ... [a]ll of the decedent's surviving descendants are also descendants of the surviving spouse and there

are no other descendants of the surviving spouse who survive the decedent, then the surviving spouse receives the entire intestate estate."

another other than a statutory claim brought under the Wrongful Death Act, section 13–21–202. *See Taylor v. Welle*, 143 Colo. 37, 41–42, 352 P.2d 106, 108–09 (1960) (noting that prior to the enactment of the Wrongful Death Act, there was no common law right of recovery against one who tortiously caused the death of another, such that there is "no recovery for death except under the provisions of the Wrongful Death Statute"); *Hale v. Morris*, 725 P.2d 26, 28 (Colo.App.1986). If an "injury" for the purposes of a wrongful death action is not the wrongful "death" at issue in such a case, then the word "death" in section 24–10–103(2) would be rendered meaningless. Thus, when considered in the context of a wrongful death suit, the CGIA's statutory definition in section 24–10–103(2)—that is, "injury" includes "death"—means that the operative "injury" to which the $150,000 damages cap applies is the wrongful death itself and not other harms suffered by family members as a result of the death.

In sum, by its own statutory definition, section 24–10–103(2) of the CGIA defines an "injury" as including "death." In addition, we note that if death were not the operative injury for actions brought under the Wrongful Death Act, then the word "death" in the CGIA statutory definition of "injury" would be rendered meaningless. Further, the Sereffs' interpretation is inconsistent with the method of distributing damages for a wrongful death action to heirs through the statutes of descent and distribution. Hence, we hold that the operative injury for the purposes of a wrongful death action is the wrongful death itself, i.e., the death of Jennifer Sereff, and section 24–10–114(1)(a) of the CGIA limits damages to $150,000 in this wrongful death case. We thus reverse the court of appeals' decision and remand this case to be returned to the trial court for proceedings consistent with this opinion.

## IV. Conclusion

We hold that the court of appeals erroneously determined that the $150,000 per injury damages cap in the CGIA applies separately to each family member in a wrongful death case. We thus reverse the court of appeals' decision and remand this case to be returned to the trial court for proceedings consistent with this opinion.

Justice EID does not participate.